JULIA SAWICKI *v.* THE CONNECTICUT RAILWAY AND
LIGHTING COMPANY ET AL.

MALTBIE, C. J., JENNINGS, ELLS, DICKENSON and INGLIS, Js.

Argued October 13, 1942—decided February 17, 1943.

*Harold E. Drew* and *Ralph H. Clark,* for the appellant (defendant The Hallock Realty Company, Inc.).

*Elmer W. Ryan,* with whom, on the brief, was *Leon E. McCarthy,* for the appellant-appellee (plaintiff).

*Martin E. Gormley,* for the appellee (named defendant).

ELLS, J. The plaintiff, while standing on the top of a retaining wall used as a sidewalk and built by the defendant Railway Company at or near the westerly boundary of New Haven Avenue in Derby, fell through a fence guarding the outer edge of the wall and was injured. She sued the Railway Company and the Hallock Realty Company, owners of the premises adjoining the wall on the west, and recovered judgment against the Hallock Company alone. She has appealed, claiming that the Railway Company also is liable. The Hallock Company has appealed, and claims there is no liability on its part.

The trial court decided that the fence had been rotten and unsafe for at least two years. The defendants concede liability on the part of someone, and the only question is, who is liable? This will be answered by deciding whether one or both of the defendants owed the plaintiff a legal duty to keep the fence in reasonable repair. The court concluded that the fence inured to the sole benefit of the Hallock Company and was appurtenant to its premises, and that use and custom through the years had imposed upon it the supervision and control of the fence.

New Haven Avenue, as laid out in 1896, was of uniform width except that where it abutted the Hallock property and properties of adjacent owners it was six feet nine inches narrower for a distance of one hundred and fifty feet. This was due to the fact that two houses on the Hallock property and other buildings on properties south thereof jutted into the highway as laid out. In 1903, the Railway Company, planning to build and operate trolley tracks along the westerly side of the highway, bought this jog from Edwin Hallock, the predecessor-in-title of the defendant The Hallock Company, and adjacent owners. The deed named as the grantee George J. Roberts, who was an agent of the Railway Company. The land sloped to the west, making it necessary for the Railway Company to fill it in and build a retaining wall so that the trolley tracks would be level. The paved portion of the highway was to the east of the land acquired. While Roberts held the property, the Hallock houses were moved back onto Hallock's land to the west, the retaining wall was built, the fence in question was built upon it and the trolley tracks were laid. The court found that there was no direct evidence as to who built the fence, and none that it was constructed by Hallock.

The new construction cut off access from the Hallock houses to the highway, so Hallock built steps for use in climbing from the yard to the top of the wall. The steps had a balustrade with a handrail on each side. At the top of each balustrade resting on the wall was a post, which posts were adjacent to the posts of the fence on top of the wall. The post at the top of each balustrade had a bolt extending through it, which bolt also extended through the nearest fence post. The fence was supported by two rails fastened to the south post and running westerly to a Hallock house, which rails were spiked with nails to the northeast corner of the house.

In 1904, about a year after he acquired the jog, Roberts conveyed this land, together with other parcels he had acquired, to the Railway Company. The deeds from Hallock and other owners of the jog to Roberts, and from Roberts to the Railway Company, contained the following provision: "It being understood and agreed, and this deed is made upon this express condition, that the premises herein conveyed are to be used for highway purposes only and the location and operation of an electric street railway thereon, and said conveyed premises are to become and be a part of the highway in front of the grantor's adjoining premises." In 1906, the Railway Company leased its properties and ceased to be an operating company. In 1936, by order of a federal court, the property was returned to the Railway Company. It is not necessary to describe intervening events. The Railway Company was granted permission "to discontinue the operation of street railway cars, without the loss of franchise so to operate," over certain routes, of which this was one. In 1937, trolley operations were discontinued, all rails, wires and poles were removed from

the property in question and the Railway Company thereafter operated buses over the highway.

Other salient facts are these: There is no sidewalk on the westerly side of New Haven Avenue in front of the Hallock property, but people for years have used the top of the wall for sidewalk purposes. Since the rails were removed the general public has not used the land in question for highway purposes; no care has been taken of it; it is rough and unfit for travel. There was nothing to indicate to persons passing on the highway where the boundary of the highway ended and the jog began. The Hallock Company never kept the surface of the jog in repair. While the trolley line was in operation, the rails were raised above the surface of the ground and there was no horse-drawn or automobile traffic over this strip of land. There has been no formal action, either by the state of Connecticut or the city of Derby, whereby this narrow strip of land described in the deeds was made a part of the highway adjoining the same.

A principal claim of the Railway Company is that there has been a complete dedication of the jog, that it became a part of the highway and that it became the duty of the municipality and not of the Railway Company to maintain the fence. There can be no dedication of land for a highway without acceptance by the general public or action by the proper authorities. *Stratford* v. *Fidelity & Casualty Co.*, 106 Conn. 34, 36, 137 Atl. 13. It is sufficient to point out that the court has not found a dedication. The question "is one of fact in so far as it involves inquiries as to whether or not the requisite acts and things have been done so that legal requirements have been met." *Phillips* v. *Stamford*, 81 Conn. 408, 411, 71 Atl. 361; *Hall* v. *Meriden*, 48 Conn. 416, 428. We point out also that the first step in the claimed dedication was

by the deeds in question, which provide that the land is to be used for highway purposes and also by a private person for the "operation of an electric street railway thereon." There was no attempt to dedicate the land for highway purposes only.

The Railway Company built the retaining wall for its own purposes, filled in the acquired land, which closely adjoined the existing highway, and created, as the court expressly found, "a dangerous condition for tenants in the Hallock property and such people as passed in its vicinity unless protected by a fence along its top." It was the duty of the creator of this dangerous condition to build a protective barrier. Despite the finding that there was no direct evidence as to who constructed the fence, the conclusion is almost inescapable that the Railway Company did. In any event, it was its plain duty to do it. An owner of property abutting on a highway rests under an obligation to use reasonable care to keep his premises in such condition as not to endanger travelers in their lawful use of the highway, and if he fails to do so, and thereby renders the highway unsafe for travel, he makes himself liable although the consequent injury is received upon his own land and not on the highway. *Ruocco* v. *United Advertising Corporation,* 98 Conn. 241, 247, 119 Atl. 48. When a cause of danger to public travel exists on private land adjoining a public highway, the liability of the owner of the land for an injury from it depends on its dangerous character with reference to public travel rather than its exact location. It need not be immediately at the boundary of the highway. *Crogan* v. *Schiele,* 53 Conn. 186, 196, 1 Atl. 899. It is true that the plaintiff in this case was not on the highway at the time she fell, but the Railway Company had thrown its land open to general travel by those passing along the street and so in effect had invited the public

to use it; and it thereby became obligated to use reasonable care to protect them from injury. *Lindblade* v. *United States Rubber Co.*, 102 Conn. 396, 400, 128 Atl. 707; *Wade* v. *Bridgeport*, 109 Conn. 100, 106, 145 Atl. 644. Whoever built the fence, it was on the Railway Company's wall and it was its duty to maintain it. That duty continued, under the facts of this case, unless and until the duty passed to another. The duty could not be avoided or shifted to the Hallock Company by the removal of the tracks or even by the abandonment of the use of the land, if there had been found to have been one. It is significant in that regard that, in the order of the public utilities commission permitting the removal of the tracks, poles and wires, it was expressly provided that it was "without the loss of franchise so to operate."

The trial court was in error in rendering judgment for the Railway Company.

The remaining question is whether the Hallock Company also was under a duty to maintain the fence. It is true that it conveyed the jog to the Railway Company with probable knowledge that the latter intended to build a wall and fill in the land which it purchased, and that the Hallock Company retained an interest in the land, in the sense that it had access to it for purposes of access to its adjoining property. It is only in this indirect manner, however, that the Hallock Company had anything to do with the creation of the dangerous condition which required the protection of a fence. The Hallock land was still at the natural level at which it had been before the wall was erected. The difference in level was caused solely by the filling in of the land and the erection of the wall by the Railway Company. We have never gone so far as to hold that if an owner fills in his land right up to the boundary line, builds a retaining wall and uses the

top of the wall as a passway the adjacent owner has a duty to build and maintain a fence on the top of that wall to protect someone from falling down onto his land, which still remains at its natural level. That is quite a different situation from one in which the defendant created the difference in level of the two properties by digging a pit on his own land. The general rule is stated, 25 Am. Jur. 657, § 364, that a landowner is not liable for injuries sustained by travelers upon the highway as the result of conditions which he has not been instrumental in creating or maintaining. There are many cases there cited, and the basis upon which they rest seems to be that by common law and by ancient statutes the duty of rendering highways reasonably safe for travelers rests upon the municipality, particularly because the control of the highways within its bounds has been vested in it. *Rochester* v. *Campbell,* 123 N. Y. 405, 415, 25 N. E. 937. In support of the general proposition, we call attention to the following cases: *Hartford* v. *Talcott,* 48 Conn. 525, 532; *Stevens* v. *Neligon,* 116 Conn. 307, 309, 164 Atl. 661; *Delaware, L. & W. R. Co.* v. *Madden,* 241 Fed. 808, 811, 154 C. C. A. 510; *Massey* v. *Worth,* 39 Del. 211, 217, 197 Atl. 673; 43 C. J. 1104, § 1867.

In the case of the Waterloo Bridge, *Robbins* v. *Jones,* 15 C. B. N. S. 221, 143 Eng. Rep. R. 768 (1863), which presented a very similar situation to the one before us, one of the propositions laid down was as follows (p. 240): "If it [the causeway] be considered as a public way, then the defendant is not answerable for the area as for a hole made at the side of the highway, because there was no hole made by the defendant. The gulf at the side of the causeway was the result of its being raised by the makers of it, not by the land at the side being excavated by the proprietors

of it. The alleged hole was coeval with the highway, and a consequence of the making thereof." The court went on to say that the fact that it was beneficial to the proprietor of the adjoining houses was not sufficient to make him liable. *Short* v. *Corporation of Hammersmith,* 104 L. T. R. (N. S.) 70 (K. B. 1911), presents a similar proposition except that the defect in the way was due to the fact that the soil slipped down onto the defendant's property; the claim was that he should have supported it; but the court held to the contrary. The Waterloo Bridge case seems still to represent the law of England. 1 Beven, Negligence (4th Ed.), p. 455. Inasmuch as in this state it has been, at least from 1801 (Statutes 1808, p. 381, chap. 5), the obligation of a municipality to protect travelers on the highways from going off the bank of the high-way, it would seem that the principle which has been applied so frequently with reference to defects occurring in the surface of the highway is equally applicable here.

We have, however, in the opinion in this case, held that the area formerly occupied by the Railway Company had not become a part of the highway, but that, by throwing it open for the use of the public, the Railway Company was under an obligation to perform a like duty to that which would have rested upon the municipality. By analogy, it might be said that the law as to defects in highways in the strict sense of the term would be applicable. However, if we look at the proposition from the standpoint of two adjoining private owners of land, the result seems to be the same. The situation is covered by § 363 of the Restatement, 2 Torts: "Neither a possessor of land, nor a lessor, vendor or other transferor thereof, is subject to liability for bodily harm caused to others outside the land by a natural condition of the land other than

trees growing near a highway. . . . *Comment: a.*
The rule stated in this Section applies although the
possessor, vendor or lessor recognizes or should recog-
nize that the natural condition involves a risk of bodily
harm to persons outside the land." We have not found
cases directly in support of this text but the rule is
logically sound. The control of the adjoining premises
in such a case is just as much in the adjoining land-
owner as the control of the highway is in the munici-
pality. If he sees fit to permit others to use them,
an obligation to protect them would seem to rest upon
him.

The trial court found that the wall was on the Rail-
way Company land, with its face at the boundary line,
but that the stone coping on top overhung the boun-
dary line about two inches; and that the boundary
line ran longitudinally through the posts and rails
of the fence so that three-quarters of an inch of the
fence overhung the Hallock Realty Company's prop-
erty and the remainder of the fence was on the Rail-
way Company's land. Under the circumstances of the
case this would not make the fence a true boundary
line or partition fence.

The trial court was incorrect in its conclusion that
the Hallock Realty Company is liable.

There is error upon both appeals, the judgment is
set aside and the case is remanded with direction to
enter judgment for the plaintiff to recover against the
Connecticut Railway and Lighting Company the
amount of damages found to be due the plaintiff in
the judgment appealed from, and for the defendant
the Hallock Realty Company.

In this opinion the other judges concurred.