FLORENCE A. BOHN AND EDWARD A. BOHN, PLAINTIFFS-
RESPONDENTS, v. HUDSON & MANHATTAN RAILROAD
COMPANY, A CORPORATION OF THE STATE OF NEW
JERSEY, DEFENDANT-APPELLANT.

Argued September 8, 1954—Decided September 27, 1954.

181

*Mr. Arthur J. Blake* argued the cause for the appellant (*Messrs. Emory, Langan & Lamb,* attorneys).

*Mr. Hyman Tobin* argued the cause for the respondents (*Mr. Raymond J. Cuddy,* attorney).

The opinion of the court was delivered by

BURLING, J. This is a civil action sounding in tort, grounded in the alleged actionable negligence of the defendant, Hudson & Manhattan Railroad Company, a corporation of the State of New Jersey, in connection with the maintenance of stairs in the railroad station of the defendant at Journal Square in the city of Jersey City, New Jersey. The action was commenced by the plaintiffs, Florence A. Bohn, and her husband, Edward Bohn, *per quod,* against the defendant in the Hudson County Court and, after the trial by court and jury, terminated in a verdict for the plaintiffs in the sum of $6,500 in favor of Florence A. Bohn and $1,500 in favor of Edward Bohn. The trial court, on motion for new trial, refused to disturb the verdict and judgments

entered thereon. Upon the defendant's subsequent appeal to the Superior Court, Appellate Division, the judgments were affirmed. 30 *N. J. Super.* 89 (1954). Thereupon the defendant addressed a petition for certification to this court, upon which certification was allowed. 15 *N. J.* 496 (1954).

This appeal is addressed to this court on the premise that the Appellate Division of the Superior Court has so far sanctioned a departure by the trial court from the accepted and usual course of judicial proceedings as to call for an exercise of this court's supervision. See *R. R.* 1:10–2(*d*). The questions involved attack the sufficiency of the evidence, with respect to first the trial court's denial of the defendant's motion for judgment of dismissal at the close of the introduction of evidence by the plaintiffs, and, second, the trial court's denial of the defendant's motion for judgment made at the termination of the reception of all the evidence. The appeal does not bring before us the *weight* of the evidence upon which the jury verdict was rendered.

The basic philosophy of negligence, breach of duty, is expressed in *Mazzilli v. Selger,* 13 *N. J.* 296, 301 (1953) as follows:

"The basic philosophy applicable to an action of this category is that to render a person liable on the theory of negligence there must be some breach of duty on his part to the individual complaining, the observance of which would have averted or avoided the injury. 1 *Shearman and Redfield on Negligence (Rev. Ed.* 1941), *secs.* 4, 5, *pp.* 10–12; *Prosser on Torts* (1941), *sec.* 30, *p.* 177, and *sec.* 31, *pp.* 178, *et seq.; Harper on Torts* (1933), *sec.* 68, *pp.* 157–158."

The measure for application to the tests of duty and breach of duty in negligence cases is to be found in the selection of the pertinent and settled substantive legal principles implemented with appropriate comparison of similar factual cases upon which courts have already pronounced judgment.

The appeal addressed to us in the present case broaches no question upon the existence, nature or extent of the injuries sustained by the female plaintiff, nor the derivative damage or injury sustained by her husband. Nor is there

any assertion that the immediate cause thereof was not the female plaintiff's loss of footing, as alleged by her, on a step on the premises of the defendant and under its exclusive control. The facts surrounding the fall were clearly illuminated by the evidence introduced and were not controverted except as to the condition of the step.

■ The basic duty in a case of this category is that the proprietor of premises, to which the public is invited for consummation of business with the proprietor, owes a duty to exercise reasonable care to see that one who enters his premises upon that invitation has a reasonably safe place to do that which is within the scope of the invitation. The duty of the proprietor is satisfied when he has used reasonable care to maintain the premises in question in a condition reasonably safe for the business invitee's proper use.

■ In New Jersey, *Phillips v. Library Co.*, 55 *N. J. L.* 307, 310 *et seq.* (*E. & A.* 1893) is the keystone decision on fundamental duty as to an invitee. In the present type of access case the duty is set forth in *Delaware, L. & W. R. R. Co. v. Trautwein,* 52 *N. J. L.* 169, 175 (*E. & A.* 1889) as follows:

"* * * The company must also provide safe means for access to and from its station for the use of passengers, and passengers have a right to assume that the means of access provided are reasonably safe * * *."

■ With respect to maintenance of railway station, "* * * in order to make out a case of negligence or of neglect of duty on the part of the company, it must be shown that they used or managed their property in such a way as to render it likely to be a source of danger to their passengers, and persons lawfully using the station * * *." I *Addison on Torts* (*Wood's ed.* 1881), sec. 24, *pp.* 270–271. In cases relating to steps "* * * it is always a question whether the mischief could reasonably have been foreseen, and whether precautions ought not to have been taken to guard against it * * *." *Ibid. Cf. The Law of Torts, Pollock* (*12th ed.* 1923), *pp.* 523–525.

■ As a matter of *caveat* it may be stated that the business proprietor, and the common carrier as well, however, is "not an insurer of the safety of its customers against accident happening to them while walking or running up and down its stairways" in its premises. *Schnatterer v. Bamberger & Co.*, 81 *N. J. L.* 558, 561 (*E. & A.* 1911). The law of negligence does not necessarily prohibit the creation of risks to others but generally requires only that the risk be not unreasonably great. *Harper on Torts* (1933), *p.* 163; *Terry, Negligence*, 29 *Harvard L. Rev.* (1915), *pp.* 40, 42. *Cf.* 38 *Am. Jur., Negligence, sec.* 136, *pp.* 796–798. There is no fallacy in the statement that it is not uncommon for one to fall down stairs when there is no defect in the stairway or its covering. 4 *Shearman & Redfield on Negligence* (*Rev. Ed.* 1941), *sec.* 797, *p.* 1820. It has been judicially noticed that falls frequently occur on perfectly constructed steps. *City of Olive Hill v. Counts*, 290 *Ky.* 588, 162 *S. W. 2d* 14, 16 (*Ct. App. Ky.* 1942).

■ Perception of the risk has been said to be the correlation of past experience with the specific facts of a situation. *James, Reasonable Man in Negligence Cases*, 16 *Missouri L. Rev.* (1951), *pp.* 1–26, at *p.* 14. *Cf. American Law Institute, Restatement of the Law,* II *Torts* (1934), *sec.* 282, *pp.* 738, 741.

■ "A plaintiff need not establish knowledge of danger when he establishes that the defendant had an adequate opportunity to discover the danger and therefore would have discovered it had he been reasonably alert * * *." *Morris on Torts* (1953), *p.* 98; *Oelschlaeger v. Hahne & Co.*, 2 *N. J.* 490, 495 (1949). *Cf. Den Braven v. Meyer Brothers*, 1 *N. J.* 470, 473 (1949).

■ Negligence may consist of entire inaction. *Robinson's Elementary Law* (*New ed. Rev.* 1910), *p.* 226. *Cf. American Law Institute, Restatement of the Law,* II *Torts* (1934), *sec.* 284, *p.* 745. Safety history evidence may be resorted to for proof of knowledge of danger. *Morris on Torts* (1953), *p.* 98. *Cf. Oelschlaeger v. Hahne & Co., ubi supra.*

The reported decisions in this as well as in other juris-dictions indicate to the unwary a gaping conflict in stairway cases. We are of the opinion that the supposed conflict of authority is nebulous.

■ Negligent maintenance may involve a great variety of defects, for instance, broken treads, worn carpet, displaced or broken metal strips (nosings on treads), or dangerously smooth surfaces of treads. 4 *Shearman & Redfield on Negli-gence* (*Rev. Ed.* 1941), *sec.* 797, *p.* 1822. Examples of decisions in each of these categories as well as variant situa-tions concerning additional factors such as darkness, grease spots, water, vegetable material or other compounding cir-cumstances are numerous. In *Shipp v. Thirty-Second St. Corp.*, 130 *N. J. L.* 518 (*E. & A.* 1943), a slippery floor case, the testimony was that the defendant's floor was "unusually slippery," "highly polished," "more highly polished than any other floor," "very slippery" and that its condition had been called to the attention of the management previous to the accident in question, but apparently had not been remedied. The former Court of Errors and Appeals in the *Shipp* case, *supra*, held that the evidence was such that "the trial judge might not take away from the jury the question of whether or not the defendant was negligent." (130 *N. J. L.*, at *p.* 523). It has been held in this state that "there are conditions of disrepair and deterioration causing injury which from their very nature and character cannot come into existence coincident with the happening, but must, by more or less slow and gradual processes covering appreci-able periods of time, have grown from a condition of reason-able safety to one not safe, as measured by the rule of reasonable care." *Stark v. Great Atlantic, etc., Tea Co.*, 102 *N. J. L.* 694, 696–697 (*E. & A.* 1926).

The duty existing, then, frequently, the result has turned upon the notice of the defective condition brought home to the party sought to be charged, or imputed to him by proof of elapsed time in which he reasonably could have acquired knowledge thereof. *Cf.* 38 *Am. Jur., Negligence, sec.* 136, *pp.* 796–798.

In *Schnatterer v. Bamberger & Co., supra,* the former Court of Errors and Appeals held that there was no evidence of knowledge and no evidence of duration of the defect, a loosened brass strip, or tread nosing, from which notice could be inferred, and therefore an involuntary nonsuit should have been granted. *Cf. Garland v. Furst Store,* 93 *N. J. L.* 127, 131 (*E. & A.* 1919).

In *Walker v. F. & W. Grand, etc., Stores,* 5 *N. J. Misc.* 541 (*Sup. Ct.* 1927), affirmed *per curiam* 104 *N. J. L.* 450 (*E. & A.* 1928) it was held that the mere fact that a step nosing was worn smooth was not sufficient evidence of negligence to go to a jury. There was no evidence that the step was dangerously smooth, that the defendant had knowledge of the condition or that the condition had existed for such a period of time as to impute notice thereof to the defendant. *Cf. Costello v. Hudson and Manhattan R. R. Co.,* 7 *N. J. Misc.* 240 (*Sup. Ct.* 1929). To the same effect (concerning waxed stairs) is *Abt v. Leeds & Lippincott Co.,* 109 *N. J. L.* 311 (*E. & A.* 1932).

The foregoing brief analysis of a few of pertinent reported decisions shows not conflict but agreement in principle.

 Fundamental principles pertinent to this case are that negligence must be proved and will not be presumed; that while proof of certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on the part of the defendant.

 It is settled that a motion for judgment of dismissal admits the truth of the plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom which is favorable to the plaintiff and denies only its sufficiency in law. And it is equally well settled that on a motion for judgment the trial court cannot weigh the evidence but must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor.

In the present matter, in the plaintiff's case, there was testimony that "the steps were just—to feel them * * * like a piece of stainless steel * * *"; "it was all slippery" for approximately 6 out of 8 inches of the depth of the tread surface; "It was worn that smoothly; there was nothing to hold you." It was testified that the condition was "due to the wearing that polished them." An expert witness testified that the treads (including the nosings) were removable and could be replaced, that he examined the step upon which the female plaintiff allegedly slipped, that it "had worn to a surface which was highly polished, almost like a sheet of glass," a condition which must have existed "from a period of eight months to a year" before the alleged occurrence. Another witness testified "It was a highly polished step, the type like if you were in a skating rink, an ice skating rink, very highly polished."

The defendant introduced in evidence depositions of one of its employees. This included testimony that the nosings on the stairway in question were "very shiny," although there was nothing wrong with those particular treads. This employee also testified that when the nosings appear "shiny" then "you put your hand and rub on them and if there is a certain amount of resistance on your hand the stairway is safe. If you can slide it and it is polished the tread has to come out," and the whole tread is removed if a shiny spot exists.

 We agree with the Appellate Division of the Superior Court that there was no error in the trial court's denial of the defendant's motion for involuntary dismissal at the close of the plaintiffs' case. Likewise we find no error in the trial court's denial of the defendant's motion for judgment at the close of the entire reception of evidence. The basic duty was admitted, the specifics of the fall were not disputed, and the evidence included testimony from which a jury might infer that the steps were not merely smooth but were *dangerously* smooth, to an extent indicating that there was a violation of the duty to maintain them in a reasonably safe condition for members of the public lawfully using the same

under the defendant's invitation, and that the condition had existed for such a period of time that the defendant reasonably could have acquired notice thereof and could have effected a reasonable correction thereof.

The emphasis of the arguments addressed to this court orally and in the briefs was placed on a supposed conflict in authority both in this state and in jurisdiction elsewhere. We have demonstrated that this purported conflict is nonexistent in New Jersey but stems from the evidence in each case introduced, the principles of law applied being consistent and settled. The supposed conflict of authority elsewhere is equally tenuous. The principles applied invariably are expressed in terms of reasonableness of exercise of the duty to maintain a reasonably safe means of access and knowledge or implied notice of the risk involved. See for example, *Leach v. S. S. Kresge Co.*, 147 *A.* 759 (*Sup. Ct. R. I.* 1929); *Chapman v. Clothier*, 274 *Pa.* 394, 118 *A.* 356 (*Sup. Ct. Pa.* 1922); *Fisher v. Pomeroy's Inc.*, 322 *Pa.* 389, 185 *A.* 296 (*Sup. Ct. Pa.* 1936); *Dickey v. Hochschild, Kohn & Co.*, 157 *Md.* 448, 146 *A.* 282 (*Ct. App. Md.* 1929); *Townley v. Rich's Inc.*, 84 *Ga. App.* 772, 67 *S. E.* 2d 403 (*Ct. App. Ga.* 1951); *Corcoran v. United Markets, Inc.*, 314 *Mass.* 26, 49 *N. E.* 2d 250 (*Sup. Jud. Ct. Mass.* 1943); *Hillis v. Sears, Roebuck & Co.*, 284 *Mass.* 320, 187 *N. E.* 558 (*Sup. Jud. Ct. Mass.* 1933); *Bennett v. Jordan Marsh Co.*, 216 *Mass.* 550, 104 *N. E.* 479 (*Sup. Jud. Ct. Mass.* 1914); *Rosenthal v. Central Garage of Lynn, Inc.*, 279 *Mass.* 574, 181 *N. E.* 660 (*Sup. Jud. Ct. Mass.* 1932); and *White v. Mugar*, 280 *Mass.* 73, 181 *N. E.* 725 (*Sup. Jud. Ct. Mass.* 1932). See also the following annotations: 162 *A. L. R.* 949, *et seq.*; 100 *A. L. R.* 725, 731, 733; 58 *A. L. R.* 141; 53 *A. L. R.* 866; 33 *A. L. R.* 212, 217; 22 *A. L. R.* 671, 673.

For the reasons expressed in this opinion the judgment of the Superior Court, Appellate Division, is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—6.

*For reversal*—None.