WILLIAM EDEN, PLAINTIFF-RESPONDENT, v. CONRAIL AND ROBERT DORRMAN, DEFENDANTS-APPELLANTS.

Argued January 26, 1981—Decided September 28, 1981.

468

*John VR. Strong, Jr.* argued the cause for appellants (*Strong & Strong,* attorneys).

*Sanford E. Chernin* argued the cause for respondent (*Chernin & Freeman,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This case is the companion case to *Renz v. Penn Central Corp.,* 87 *N.J.* 437 (1981). In this case the plaintiff, William Eden, fell onto Conrail's railroad tracks while suffering from a grand mal epileptic seizure. Plaintiff brought a negligence action seeking damages for personal injuries caused when he was struck by a train operated by defendant Dorrman and owned by defendant Conrail. The complaint against Conrail was dismissed at the end of plaintiff's case on the theory that the railroad immunity act, *N.J.S.A.* 48:12–152, precluded liability to anyone negligently injured while on railroad tracks without authority. The jury found Dorrman not negligent. The Appellate Division reversed and remanded as to both defendants. 175 *N.J.Super.* 263 (1980). However, a dissent was filed disagreeing with the majority as to several issues. The plaintiff filed an appeal as of right pursuant to *R.* 2:2–2(a).

The plaintiff was 31 years of age. He had suffered from grand mal and petit mal epileptic seizures since he was eight years old. As long as he was on medication, he was capable of functioning while experiencing a petit mal seizure, being able to talk with people, maintain his balance and generally be aware of his surroundings. When he was in the midst of a grand mal seizure, however, he would become unconscious, fall down and lose memory. Plaintiff suffered petit mal seizures approximately once a week before the accident in question. His last uncontrolled grand mal seizure occurred while he was a passenger on a train in Canada in 1971.

At the time of the accident on April 22, 1977, plaintiff was employed in Paterson, New Jersey. Each workday, he walked from his place of employment at the Irving Trust Building to the railroad station in Paterson. The actual waiting area consists of a blacktop platform extending more than 1,000 feet between the eastbound and westbound tracks. The platform is only inches above the rails. There is a white line two feet from the edge of the tracks, but there are no physical barriers between the platform and the tracks. While waiting for the train, plaintiff put down his briefcase and began walking around the platform. He was aware of the white line and knew that people on the platform were not to cross the line for their own safety.

Plaintiff then fell onto the tracks as a result of a grand mal seizure and was struck by an approaching Conrail train. All that he recalls of the entire accident is looking around while standing on the platform, seeing a signal device overhead, and thereafter being awakened while on his back as he was being removed from the scene. The train that struck plaintiff was operated by Robert Dorrman, an engineer for Conrail. The train was heading in a westerly direction toward Paterson. Approaching the Paterson station the tracks curve to the right (north) for approximately 200 feet and then straighten out between 600 and 900 feet from the eastern end of the platform area. When Dorrman reached the end of this curve he made a general observation down the tracks toward the station but saw nothing out of the ordinary. At this point, as it approached the station, the train was going approximately 30 m. p. h., or 40 feet per second. When approximately 300 feet from the platform Dorrman next looked down the tracks at which point he noticed what appeared to be a cardboard, boxlike object, light brown in color. The object appeared to be approximately five to six feet long, two feet wide and three to four inches thick, but Dorrman did not view the object as an obstruction and, because he did not think the object was a human being, he decided not to apply his brakes at that point.

When the engine was approximately thirty feet from the object, Dorrman blew the train's whistle and noticed the object move, at which point he realized for the first time that it was a human being. He then applied his brakes, but it was too late to avoid striking the plaintiff who was making a futile effort to scramble off of the tracks and onto the platform. The injuries suffered from the accident gave rise to this action.

## I

We have decided today in *Renz v. Penn Central* that the railroad immunity act, *N.J.S.A.* 48:12–152, does not, as viewed by the courts below, codify common law principles of duty and trespass. Rather the act incorporates as its legal underpinning principles of fault and contributory negligence. This is evinced by the clear wording of the statutory enactment which holds that persons engaging in certain conduct described in the statute "shall be deemed to have contributed to the injury sustained and shall not recover therefor any damages."

We have further held, as a matter of statutory interpretation, that the statute incorporated the legislative determination to create railroad immunity based upon the underlying common law doctrine of contributory negligence for so long as that doctrine in its essential elements endured.

Consistent with the notion that this railroad immunity statute, like all immunity enactments, must be strictly construed, *Potter v. Finch & Sons*, 76 *N.J.* 499, 502 (1978), we have lastly determined that the Legislature would not have intended its rule of railroad immunity from liability, enacted in 1869, to remain without modification at this time over a century later when the underlying legal theory of contributory negligence was no longer a part of New Jersey or American common law—having been rendered an obsolete historical relic by its modern heir, the doctrine of comparative negligence.

For these reasons we have prospectively held, subject of course to legislative intervention and modification, that the

railroad immunity act is deemed to be predicated on the contemporary principles of comparative negligence. This means that the conduct of a person walking, playing or running on or along the railroad or its tracks or jumping on or off moving railroad cars now constitutes minimal or threshold comparative negligence under the statute. Such a person is not barred from recovery for resulting injuries except if his negligence on a comparative basis is greater than that of the railroad.

Given this redefinition and reapplication of the statutory enactment, we must assess the applicability of the statute as construed to the situation present in this appeal—a person on the tracks as a result of an epileptic seizure. Judge Fritz, writing for the Appellate Division, although understandably applying the underlying doctrine of trespass rather than contributory negligence, held the statute was inapplicable to the plaintiff in this case because he was on railroad property without volition.

We believe that this same result obtains even under our interpretation of the enactment in *Renz* as one based upon comparative negligence. It is undisputed that Eden fell upon the railroad tracks as a result of an unconscious state. The reasons that persuaded Judge Fritz below to conclude that this factual circumstance precluded the application of the trespass doctrine, 175 *N.J.Super.* at 274–275, apply even more cogently in fending off the imposition of negligence under the doctrine of comparative negligence. We do not believe that non-cognitive action brings a person within the purview of the railroad immunity act or is sufficient to trigger comparative negligence principles as incorporated by the statute. We are thus satisfied that the railroad immunity statute does not in this setting serve to impute negligence to the plaintiff as a matter of law. The statute does not apply and its provisions cannot be invoked to bar or reduce any recovery to which plaintiff may otherwise be entitled.

■ Nonetheless, in the present posture of the case, there has been no consideration of the issue of plaintiff's negligence independent of the railroad immunity act. While plaintiff's unconscious falling upon the railroad tracks, considered in isolation, cannot fairly be viewed as faulty or negligent conduct, it is unclear from the record whether circumstances other than plaintiff's non-volitional presence on the tracks, such as plaintiff's awareness of his condition and the likelihood of danger to himself, or the reasonable foreseeability of the potential for an epileptic seizure under circumstances creating a risk of personal injury, might be sufficient to render his conduct on the platform negligent. Because of the previous construction of the statute, it does not appear that any of the parties focused on or addressed these other factual aspects of plaintiff's conduct as they bear upon comparative negligence. These factors are appropriately a concern for a jury and consequently we deem it proper to remand this case for the trial judge and jury to assess these matters under the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1, –5.2.

## II

Plaintiff has raised additional grounds which he contends constitute reversible error in this case, namely, the inadequacy of the jury charge, the invalid use of answers to interrogatories at trial and the failure to transcribe portions of testimony read to the jury. In view of our disposition today, we need not decide whether these assertions, if sustainable, constitute reversible error. The Appellate Division, however, addressed these contentions in order to guide the trial court on remand. We view the determination by Judge Fritz below as to the interrogatories, the transcription of the testimony read to the jury and the confusion inherent in the jury charge to be substantially correct. 175 *N.J.Super.* at 278–283.

The majority and dissent in the court below also addressed the question of whether plaintiff Eden should be considered a tres-

passer within the framework of the railroad immunity act and, if so, what duty, if any, was owed by the railroad. Although we have determined in the companion case of *Renz v. Penn Central Corp.* that the railroad immunity act is based upon principles of comparative negligence, the defendant railroad on remand is, of course, free to argue that the plaintiff in this case was a trespasser. We caution, however, that plaintiff, under the facts in the present record, could very well be considered as one authorized to be on railroad property. Because Eden was clearly an invitee in terms of his presence in the train station and on the platform, the defendant railroad was required "to use reasonable care to make the premises safe." *E. g., Handleman v. Cox,* 39 *N.J.* 95, 111 (1963). Plaintiff surely did not cognitively desire to leave the authorized area, but did so involuntarily. Accordingly, if the railroad inadequately protected against an individual's inadvertent entrance onto a dangerous area, the plaintiff may very well have remained an invitee, or as noted by Judge Fritz, have become a licensee or a "tolerated intruder," rather than a trespasser, even though he was not expressly invited into the area where the harm occurred. The Appellate Division also opined that a person not on another's property pursuant to conscious choice is not a trespasser. 175 *N.J.Super.* at 276. However, neither the parties nor the appellate court had the benefit of addressing that particular issue unencumbered by the railroad immunity act, *N.J.S.A.* 48:12–152, and therefore we do not here pass upon it.

Although all the factors in the present record strongly indicate that the plaintiff was not a trespasser and that the railroad had a requisite duty of care, we cannot prognosticate that upon remand there will not exist genuinely disputed issues of material fact that may directly or inferentially support a finding that the plaintiff was a trespasser. In that posture of the proofs, the parties and trial court should consider our decision in the companion case of *Renz v. Penn Central Corp.* as to the appropriate duty of care that would be owed by the defendant railroad to the plaintiff.

Lastly, we must consider the application of our determination today to the railroad engineer, Dorrman. Under our decision in *Potter v. Finch & Sons, supra,* the railroad immunity act, even as previously interpreted, did not bar an action against a railroad employee. Accordingly, the issue of the engineer's liability was submitted to the jury by the trial judge. In the trial judge's charge, the jury was told that Eden was a trespasser, a charge which, in view of our discussion above, was correctly criticized by the court below. Potentially affected by the unavailability of recourse to the corporate defendant and by the notion that Eden was initially deemed to be a trespasser, the jury found no negligence on the part of Dorrman. The Appellate Division found these influences upon the jury to be sufficient to justify a remand as to liability of the individual defendant. We agree. See *Potter v. Finch & Sons, supra,* 76 *N.J.* at 509 (Pashman, J., dissenting, noting that, equitably, individual defendant and defendant railroad should be treated similarly).

Accordingly, the judgment below is modified and, as modified, is affirmed.

SCHREIBER, J., concurring.

I agree with the majority that the complaint against Conrail should not have been dismissed at the end of plaintiff's case. The Railroad Immunity Act, *N.J.S.A.* 48:12–152, did not preclude recovery since plaintiff was not injured while walking, standing or playing on the railroad or by jumping on or off a car while in motion. See *Renz v. Penn Central,* 87 *N.J.* 437, 463 (1981) (Schreiber, J., concurring).

At the trial the statutory immunity was properly held to be inapplicable to the engineer. *Potter v. Finch & Sons,* 76 *N.J.* 499 (1978). However, a question existed as to the nature of the duty owed. Since the charge incorrectly described that duty and the cause is being remanded for a new trial, it is necessary to delineate guidelines for the trial court to follow which will be

applicable to the engineer and the railroad. Traditionally, the scope of the duty owed depends upon the plaintiff's status, be it as trespasser, licensee or invitee.

The duty owed to a trespasser depends in the first instance on whether the plaintiff's injury is due to a natural condition of the land or an activity which has been or is being carried on by the property owner. In the former situation, the property owner generally is only under an obligation to warn a known trespasser of a concealed dangerous condition. *Morril v. Morril*, 104 *N.J.L.* 557 (E. & A. 1928). In the latter, the property owner should refrain from intentionally injuring the trespasser. *Sohn v. Katz*, 112 *N.J.L.* 106 (E. & A. 1934).

Some exceptions have developed with respect to dangerous activities in railroad cases. One requires the defendant to exercise reasonable care for the safety of trespassers where their presence is to be anticipated and the activity carried on involves a high degree of danger. *Cleveland-Cliffs Iron Co. v. Metzner*, 150 *F.*2d 206 (6 Cir. 1945). It is not essential that the trespasser be perceived, but it is sufficient if the information would lead a reasonable man to conclude that a person might be there. The Second Restatement of Torts gives this illustration:

> The engineer of the X & Y Railroad Company sees lying upon the track a pile of clothing such as would give a reasonable man cause to suspect that it might contain a human being. Under these circumstances the engineer is not entitled to assume that it is not a human being but is required to keep the engine under control until he is certain that it is not. [*Restatement, Torts* 2d, § 336 at 191, illus. 1 (1965)]

See also F. James, "Tort Liability of Occupiers of Land: Duties Owed to Trespassers," 53 *Yale L.J.* 144, 177–79 (1953), advocating elimination of determining duty on the basis of classification and deciding instead whether the property owner's activities constitute an unreasonable danger under all the circumstances.

The duty owed to a licensee with respect to dangerous activities differs from that owed to a trespasser. The general rule is that there is an obligation to exercise reasonable care for the

protection of the licensee.[1]  See *Berger v. Shapiro*, 30 *N.J.* 89, 97 (1959).  The property owner must act with due regard for the possibility that the licensee may be present.  Dean Prosser has observed:

> The obligation is higher than that owed to a trespasser, because the possessor may be required to look out for licensees before their presence is discovered.... [Prosser, *Law of Torts* (4 ed. 1971), at 380]

The duty owed to a business invitee is not only to protect the invitee against dangers which the owner knows or with reasonable care might discover, *Bohn v. Hudson & Manhattan R. Co.*, 16 *N.J.* 180, 185 (1954), but also to carry on its activities in a reasonably prudent manner.

An inadvertent involuntary deviation from the area of invitation does not necessarily destroy the status as an invitee.  It has been held that some intrusions upon the lands of others do not transform the individual into a trespasser.  For example, a pedestrian on a public highway may detour onto adjoining land to avoid an obstruction, *Sawicki v. Conn. Ry. & Lighting Co.*, 129 *Conn.* 626, 30 *A.*2d 556 (1943);  or an inadvertent slip into adjoining land does not affect invitee status, *Puchlopek v. Portsmouth Power Co.*, 82 *N.H.* 440, 136 *A.* 259 (1926);  Prosser, *Law of Torts* (4 ed. 1971), at 353.  *Restatement, Torts* 2d, § 368, comment e at 269–70 (1965), projects a similar proposition:

> The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the normal incidents of travel.  This is true particularly where the deviation is inadvertent, as where one walking on the highway slips and falls into an excavation next to it, or misses his way in the dark, strays a foot or two to one side, and falls into the pit.

The facts in this case fall within the same pattern.  The plaintiff was a business invitee on the common carrier's platform, a place to which the public was invited, and involuntarily fell upon the tracks due to an unexpected grand mal seizure. He had not experienced an attack of this nature for at least six

---

[1]This assumes that the licensee is not fully aware of the activity.  *Restatement, Torts* 2d, § 341 at 207–08.

years. On these facts, the burden being on the defendant to establish contributory negligence, I would hold that the plaintiff continued to be an invitee and was in a position comparable to the user of a public highway who inadvertently fell into an adjacent area. The engineer and the railroad owed him a duty to operate its dangerous instrumentality with reasonable care so as to avoid causing the plaintiff injury.

The jury charge contained numerous prejudicially erroneous instructions in which the trial court assumed the plaintiff was a trespasser. A few illustrations demonstrate the point. The trial court stated a railroad's engineer is "not responsible for the safety of a person who trespasses on the railroad track"; the railroad "employees have a duty to exercise reasonable care to avoid injuring a trespasser *when the victim is actually discovered* in a position of peril" (emphasis supplied); the engineer has a "right to assume that a person on a track will leave it in time to avoid a collision"; "the engineer owes no duty to a trespasser until his peril is discovered"; the engineer is bound "to only exercise reasonable and ordinary care to avoid injuring trespassers *after* he has discovered them to be imperiled" (emphasis supplied); the engineer is not liable if *"after* becoming aware" (emphasis supplied) of the physical condition of the injured person, he uses all reasonable efforts to prevent an injury; the engineer is not required to slacken speed or stop after having given a signal to a person on the track; when a person is discovered on the track, the engineer is under a duty to exercise due care, but it is not negligence if the engineer fails to take precaution where it is impossible to do so *after* the person's peril *has been discovered*; where a person *has been discovered* in a position of peril on the tracks, the engineer must use all reasonable means to avoid an accident. These references made it clear to the jury that the engineer's duty did not arise until *after* he discovered the plaintiff on the track.

Putting aside the question whether the plaintiff was an invitee or licensee and assuming his status was that of a trespasser, the trial court's charge conflicted with the principle

that a possessor of land who has reason to be aware of a trespasser's presence should carry on activities with reasonable care for the trespasser's safety. Thus, the engineer was not entitled to assume that the obstruction on the track was not a human being and the trial court erred in stating that his duty of due care did not arise until after he was aware that a person was on the track. The charge also conflicted with the principle, which I believe was appropriate, that the defendant was obligated to operate the train with reasonable care, including the exercise of reasonable care to discover his presence on the track. So, irrespective of plaintiff's status, the jury instructions were erroneous on a crucial issue.

I also agree with the majority that the plaintiff should have been permitted under the circumstances to use the defendant's interrogatory answers against both defendants and that the trial court should have consulted counsel before reading portions of the transcript to the jury.

Justice PASHMAN joins in this opinion.

PASHMAN and SCHREIBER, JJ., concurring in the result.

*For modification and affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For reversal*—None.