295 N.J. Super. 196 (1996)
684 A.2d 986
WILLIAM LOPEZ, ADMINISTRATOR OF THE ESTATE OF NELSON LOPEZ, DECEASED; WILLIAM LOPEZ, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF NELSON LOPEZ; WILLIAM AND MARIA LOPEZ, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY TRANSIT; NEW JERSEY TRANSIT RAIL OPERATIONS, INC.; NEW JERSEY TRANSIT POLICE; W.S. KELTON; CITY OF PATERSON; CITY OF PATERSON, HEALTH DEPARTMENT; CITY OF PATERSON, HEALTH DIVISION; CITY OF PATERSON, BOARD OF HEALTH, DEFENDANTS-RESPONDENTS, AND MORVAL SUPERMARKET; 200 BROADWAY CORP.; JOSE RODRIGUEZ; PLACIDO MARTINEZ; VAN HOUTEN ASSOC., A NEW JERSEY PARTNERSHIP; CALFAYAN ARAM; JOHN PANTAZOPOULOS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 22, 1996.
Decided November 19, 1996.
*198 Before Judges KLEINER and COBURN.
Mandelbaum, Salsburg, Gold, Lazaris, Discenza & Steinberg, attorneys for appellants (Barry M. Packin, of counsel; Mr. Packin and Craig W. Alexander, on the brief).
Peter Verniero, Attorney General, attorney for respondents New Jersey Transit, New Jersey Transit Rail Operations, Inc., New Jersey Transit Police and W.S. Kelton (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Bertram P. Goltz, Jr., Deputy Attorney General, on the brief).
L. John Topchik, attorney for respondent City of Paterson.
The opinion of the court was delivered by COBURN, J.S.C. (temporarily assigned).
*199 In this wrongful death action, plaintiffs appeal from the grant of summary judgment to the remaining defendants, New Jersey Transit (and New Jersey Transit Rail Operations, Inc.), W.S. Kelton, the engineer of the New Jersey Transit train which struck and killed the decedent, Nelson Lopez, while he stood on the railroad's tracks, and City of Paterson, the owner of adjoining property.
Plaintiffs posit their claims against New Jersey Transit and City of Paterson on the theory that a dangerous condition of their property caused the accident. N.J.S.A. 59:4-2. The claim against Kelton is based on an allegation of negligence in the operation of the train. The action against New Jersey Transit fails since the cause of the accident was not the condition of its tracks, but the danger of unauthorized use of those tracks for private recreational activity; the City of Paterson is not liable because the accident did not occur on its property; and the engineer, Kelton was entitled to summary judgment because plaintiffs presented no evidence of negligence. Therefore, we affirm.
On December 5, 1990, at about 5:30 p.m., Nelson Lopez, age 14, and two friends approached the railroad tracks owned by New Jersey Transit at a point about a quarter of a mile from the Paterson station. They walked up an embankment and then crossed the tracks to a cement wall which was immediately adjacent to the further track. The cement wall was owned by the railroad. On the other side of the wall and below it was property owned by the City of Paterson. A light pole was located on the city's land close enough to the wall so that one could jump on it from the wall and slide down. When the light pole was erected, sometime before 1977, there were remains of an old rusty fence on top of the wall. Around 1988, New Jersey Transit removed what was left of the fence. Viewing the evidence most favorably from plaintiffs' point of view, we must assume that for at least three or four years before the accident children would cross the tracks, step on the wall, and slide down the pole at least three or four *200 times a week. The children were chased away from this activity on many occasions by employees of the City and by the police. The New Jersey Transit engineer, defendant Kelton, had rarely seen adults or children in this area before the accident but he had understood from other engineers that trespassing occurred there, that it was a "bad spot."
Nelson Lopez and his friends heard the train coming. The friends quickly slid down the pole, but Lopez, apparently frightened by the oncoming train, attempted to cross back over the railroad tracks. He was struck as he stood on one of the tracks after the train rounded a curve and entered the straightaway where the wall was located. Before rounding the curve, the engineer could not see the accident area.
Because of the hour, it was dark, but the weather was clear. The tracks were dry. The engine's headlights were on full. The train was moving at its normal speed of forty miles per hour. The engineer was seated in the operating compartment of the engine at the head of the train. He was looking forward as the train came out of the curve onto the straightaway. He immediately saw Nelson Lopez standing on the tracks on which the train was running and within a half second hit all the emergency brakes. Tragically, the engine could not stop in time to avoid the accident.

I
Plaintiffs' claim against New Jersey Transit, a public entity, is governed by N.J.S.A. 59:4-2 of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3. To recover, plaintiffs must establish that a "dangerous condition" of defendant's property was a proximate cause of the accident. Levin v. County of Salem, 133 N.J. 35, 626 A.2d 1091 (1993). In Levin the Court rejected the proposition that "whenever danger exists, so does a dangerous condition of property." Id. at 49, 626 A.2d 1091. Instead, it adhered to prior statements of the law holding that "dangerous condition" as used in this statute refers to the "`physical condition *201 of the property itself and not to activities on the property.'" Id. at 44, 626 A.2d 1091 (citation omitted).
The accident in Levin happened when plaintiff dove into shallow tidal waters from a bridge owned by the County. This use of the bridge had been common for years. Plaintiff claimed that the County was liable for failure to erect a fence at the edge of the bridge, asserting the lack of a fence was a dangerous condition of public property in light of the well-known diving activity. The Court rejected the claim because there was no proof the bridge itself was defective in relation to its function. Id. at 49, 626 A.2d 1091. The Court said:
The question in this case is whether the unauthorized use of public property for private recreational activities thereby puts the property `in dangerous condition' under N.J.S.A. 59:4-2 of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to:12-3 (the Act or the New Jersey Act), when the recreational activities themselves are risky and pose danger to the participants. In this case a man dove from a county bridge into shallow tidal waters, suffering a paralyzing injury. We conclude that however tragic the accident, its cause was not the condition of the bridge but the dangers of unsupervised recreational activity for which there is no public-entity liability under the Act.
[Id. at 37, 626 A.2d 1091.]
The Court also cited with approval Bartell v. Palos Verdes Peninsula School District, 83 Cal. App.3d 492, 147 Cal. Rptr. 898 (1978), noting:
[Bartell] is a case much like ours. Even though the school district allegedly knew that children used its playground for skateboarding and took no measure to prevent the activity, the court found that plaintiffs failed to state a cause of action for a "dangerous condition of public property" because the injury was the direct result of the childrens' dangerous conduct, not a defect in the physical condition of the property.
[Id. at 47, 626 A.2d 1091.]
In Hawes v. New Jersey Dept. of Transp., 232 N.J. Super. 160, 556 A.2d 1224 (Law Div.), aff'd o.b., 232 N.J. Super. 159, 556 A.2d 1224 (App.Div. 1988), a wrongful death case, the decedent was struck and killed by a train when he attempted to cross the railroad track. Defendant was alleged to be liable because of its failure to erect fences or take other steps to prevent pedestrians *202 from crossing the track despite knowledge that the area was regularly used by trespassers. The court noted N.J.S.A. 59:4-2 imposes liability upon a public entity when a dangerous condition of its property causes injury and that dangerous condition is defined by N.J.S.A. 59:4-1(a) as meaning "`a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.'" Id. at 161, 556 A.2d 1224. The court rejected the contention that foreseeable dangerous activity such as trespassing creates a dangerous condition of the property under the statute, and held the physical condition of the property must itself be defective for there to be recovery against a public entity. Id. at 162, 556 A.2d 1224. The court concluded by saying:
[It] is clear ... that if a person were to use the defendant's property with due care, he would encounter no substantial risk of harm. Commonsense dictates that a person using due care would make certain no trains were approaching before walking across a railroad track. Exercising even a minimum of care, a person should be able to eliminate any chance of being hit by a train. Accordingly, NJT's property did not constitute a dangerous condition.
[Id. at 164, 556 A.2d 1224.]
We perceive no distinction between the circumstances in Hawes and those present in this case. In so holding, we reject plaintiffs' theory that the minority of the plaintiff is relevant to the issue of the alleged dangerous condition of the property. In that regard, we noted the following in Daniel v. State Dept. of Transp., 239 N.J. Super. 563, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990):
As we understand the statute, the phrase `used with due care' does not refer to the actual activities of the parties. Rather, the focus is on the condition of the property itself. * * * The reasonable user requirement contained in N.J.S.A. 59:4-1a thus presupposes some uniform standard of behavior with regard to persons utilizing public property. * * * Under the statutory definition, a dangerous condition exists if the property poses a substantial risk of injury when it is used in a reasonably prudent manner in a foreseeable way. To that extent, the reasonable user requirement does not refer to the actual activities of the plaintiff or others. Rather, it constitutes a personification of a community ideal of reasonable behavior.
[Id. at 586-87, 571 A.2d 1329 (citations omitted).]
*203 Plaintiffs contend the relation of the tracks to the wall, the removal of the fence which had been erected on the wall, and the proximity to the wall of the light pole constituted an attractive nuisance which ought to form a basis for liability as to New Jersey Transit. While such circumstances might create an attractive nuisance on private lands, that is of no help to plaintiffs here. As previously noted, liability for a dangerous condition of public property is not dependent on the age of the user. Furthermore, the attractive nuisance doctrine is inapplicable to a public entity. A claim based on the supposed dangerous condition of public property must be determined solely in accordance with the statutory elements of N.J.S.A. 59:4-2 and N.J.S.A. 59:4-1a; Kolitch v. Lindedahl, 100 N.J. 485, 492, 497 A.2d 183 (1985).

II
Plaintiffs contend the City of Paterson should be held liable for creating an attractive nuisance by erecting the light pole in proximity to the wall, and, alternatively, because the pole was a dangerous condition of its property. As we have noted, the attractive nuisance doctrine is not relevant to a public entity's liability. Of course, the pole itself, having no defect, was not a dangerous condition. Furthermore, the accident did not occur on the property of the City. Thus, there is no basis for maintaining an action under N.J.S.A. 59:4-2.

III
Plaintiffs' claim against W.S. Kelton is based upon the contention he was negligent in failing to reduce the speed of the train and in failing to sound the train's whistle before he rounded the curve and reached a point where he could see the decedent in peril because he knew trespassing occurred in this area of the tracks.
A public employee, such as Kelton, "is liable for injury caused by his act or omission to the same extent as a private *204 person" unless otherwise immunized by the Tort Claims Act. N.J.S.A. 59:3-1. There is no suggestion by defendants here that Kelton has the benefit of any of the Act's immunities. See, Tice v. Cramer, 133 N.J. 347, 627 A.2d 1090 (1993). Nonetheless, on the circumstances present, Kelton was properly granted summary judgment.
In Jelinek v. Sotak, 9 N.J. 19, 86 A.2d 684 (1952), a case in which a train collided with a truck at a grade crossing, the Court had this to say respecting the responsibility of the train's engineer:
There is nothing ... that requires an engineer to stop a train merely because of the possible danger of a collision. There are reciprocal rights and duties involved. The engineer can rightfully assume that travelers in the exercise of due care with due regard to the railroad's right of way, will not attempt to cross the tracks. But if in the exercise of reasonable diligence it should become apparent that the traveler in disregard of due care or the railroad's right of way will or is attempting to cross the crossing before the train so that a collision will probably result, then from that point on the engineer must with all reasonable care and diligence attempt to stop the train. If he does so then there is no negligence.
[Id. at 23, 86 A.2d 684 (citation omitted).]
In Duffy v. Bill, 32 N.J. 278, 295, 160 A.2d 822 (1960), the Court reiterated the Jelinek view of an engineer's duty when approaching a grade crossing:
Upon discovering that a collision with a traveler at a crossing could occur, the operator of a locomotive is required to exercise reasonable care under the circumstances to prevent the collision, and this standard of care includes the duty to endeavor promptly to bring the train to a halt when it appears that such action is necessary.
Grade crossings are designed, of course, for the use of both the railroad and people seeking to pass over the tracks. We can perceive no reason for imposing a higher duty of care to a trespasser. We note that the state of the law in New Jersey respecting an engineer's duty to such individuals who trespass along the general run of the tracks appears to be unsettled. Renz v. Penn Central Corp., 87 N.J. 437, 462-63, 435 A.2d 540 (1981); Eden v. Conrail, 87 N.J. 467, 475-79, 435 A.2d 556 (1981) (Schreiber, J., concurring). In the latter case, Justice Schreiber observed, for himself and Justice Pashman:

*205 Putting aside the question whether the plaintiff was an invitee or licensee and assuming his status was that of a trespasser, the trial court's charge conflicted with the principle that a possessor of land who has reason to be aware of a trespasser's presence should carry on activities with reasonable care for the trespasser's safety. Thus, the engineer was not entitled to assume that the obstruction on the track was not a human being and the trial court erred in stating that his duty of due care did not arise until after he was aware that a person was on the track. The charge also conflicted with the principle, which I believe was appropriate, that the defendant was obligated to operate the train with reasonable care, including the exercise of reasonable care to discover his presence on the track.
[Id. at 478-79, 435 A.2d 556.]
We need not attempt to resolve the question whether the Court will ultimately accept the views of Justices Schreiber and Pashman regarding an engineer's duty to a trespasser. For even assuming them to be correct they are of no aid to the decedent in this case. As Jelinek, supra, noted, "[t]he duty of reasonable care and diligence is founded on the probabilities of a given situation, not on mere possibilities." Jelinek, supra, 9 N.J. at 24, 86 A.2d 684. The Schreiber/Pashman concurrence in Eden requires, like Jelinek, that there be at least some activity which an alert engineer could observe which would have given "reason to be aware of a trespasser's presence...." 87 N.J. at 479, 435 A.2d 556. That kind of activity was not present here. At most, the engineer knew that trespassing occurred occasionally in the area and that there was a slight possibility that on rounding the curve he might see a trespasser in peril. We have discovered no case which would require in such circumstances either a reduction of speed or the sounding of a warning whistle simply because someone might be on the tracks. See, 75 C.J.S., Railroads, section 910, pages 301-02; Chesapeake & Ohio Ry. Co. v. Bailey, 311 Ky. 725, 225 S.W.2d 299, 300-01 (Ct.App. 1949); Whittle v. Thompson, 352 Mo. 637, 179 S.W.2d 22, 24 (1944). Consequently, Kelton was entitled to the summary judgment awarded to him by the court below. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995).
Affirmed.